IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DAVID SHAMONT LINDSEY,

              Plaintiff,

  v.

                                         OPINION and ORDER

SHANE HEISER, NATHAN REBLIN,
JOSHUA RICHTER,                                    20-cv-790-wmc
RYAN BANNERMAN,
and OFFICER JAZDZEWSKI,

              Defendants.

---

      In April 2022, plaintiff David Shamont Lindsey, pleaded guilty and was sentenced to 12 years in federal prison for trafficking methamphetamine in *United States v. Lindsey,* 19-cr-125-wmc. As this court noted at his sentencing, Lindsey had repeatedly tried to escape the consequences of his actions by accusing the government of racism, including providing false statements and fabricated stories to the court. (Sent. Hear. (dkt. #205) 4, in 19-cr-125.) One such fabrication was that government investigators and prosecutors brought drug charges against him in retaliation for accusations he had made against a Wisconsin Rapids Police Detective, Nathan Reblin, for allegedly engaging in child pornography, human trafficking, stalking and harassment. The court rejected Lindsey's assertions as "outlandish," "fantastic," and "wild," but most importantly, lacking in any "actual evidence." (Pretrial Ord. (dkt. #135) 9–10, 20–21.)

      In this civil case, which he filed approximately a year after his 2019 federal indictment but well before his conviction and sentencing in that criminal case, Lindsey had similarly asserted misconduct and retaliation by numerous Wisconsin law enforcement officers, who allegedly fabricated evidence and brought criminal charges against him

because of his race and in retaliation for his honest complaints about Detective Reblin. At the end of last year, all defendants moved for summary judgment on Lindsey's claims, which the court must grant because no reasonable jury could find any of the defendants violated his constitutional rights.

## UNDISPUTED FACTS

**A. Background**

Plaintiff David Lindsey is African American and is currently incarcerated at FCI-Memphis on federal drug trafficking charges.

Defendant Shane Heiser works as a special agent for the Wisconsin Department of Justice Division of Criminal Investigations ("DCI"). In 2016, he worked in internet crimes against children; in 2017, he worked in narcotics investigations; and since 2018, he has worked in major crimes. Defendant Nathan Reblin also works as a special agent for DCI. Before that, he worked as an investigator in the Wisconsin Rapids Police Department and was assigned to the Central Wisconsin Drug Task Force from 2014 to 2017. Reblin had not only investigated Lindsey in the past for criminal activity, but most relevant here, Lindsey had acted for some time as a cooperating informant for Reblin. DCI Special Agents Reblin and Heiser are referred to as the "State defendants" by the parties.

Defendant Ryan Bannerman is a deputy with the Wood County Sheriff's Office, and the remaining two defendants work for the Wisconsin Rapids Police Department: Jordan Jazdzewski as an officer, and Joshua Richter as a detective.

In August 2017, Lindsey brought a complaint against Detective Reblin on DCI's website for allegedly sharing child pornography and trafficking women, among other

criminal activities. Based on Lindsey's allegations, DCI launched an investigation, led by defendant Heiser and Special Agent Tami Sleeman, who is not a defendant. Special Agents Heiser and Sleeman interviewed Lindsey at his home, where he reported being personally harassed and stalked by defendant Reblin, along with two of his friends, Alanna Byes and Amanda Zabawa. Among other things, Lindsey told the DCI Special Agents that since about June 25, 2017, he had been receiving harassing text messages from five, different phone numbers, all of which he believed came from an app on Reblin's phone to hide his actual phone number. Some of these alleged texts were specifically about Lindsey's relationship with Byes, but he reported that Byes also had been receiving harassing text messages.

In an interview with Heiser and another investigator on August 28, 2017, Zabawa corroborated Lindsey's report, claiming that she, too, had been receiving harassing text messages from Reblin. Zabawa also reported that in 2013, Reblin had forcefully raped her in a police car in Wausau, after he picked her up at a Starbucks and offered to take her to the hospital for drug withdrawal treatment.

The DCI Special Agents interviewed Byes at Waupaca County jail regarding the alleged texts from Reblin after she had been arrested for stalking Reblin. However, Byes told investigators that Lindsey and Zabawa had convinced her that the messages were coming from Agent Reblin, even though she had never met him. Byes further stated that after Lindsey gave her Reblin's phone number, she not only went to his house and followed him, but texted him and called him. Byes further explained that after being arrested for stalking, she came to believe that Zabawa may have been involved in sending the text messages.

The DCI Agents also interviewed other witnesses, including employees at the Wausau Police Department and local Starbucks, but found no corroborating evidence as to either Zabawa's or Lindsey's claims. In addition, neither Zabawa nor Lindsey provided the investigators with the alleged harassing and vulgar messages that they claimed Reblin had been sending. Moreover, when the investigators re-interviewed Zabawa and confronted her about unverified facts in her story, she recanted, admitting to fabricating the entire story, including the alleged rape, at Lindsey's direction. Zabawa further explained Lindsey had recently got in trouble for drug-related offenses, and Detective Reblin had been the investigator. Agent Heiser also attempted to re-interview Lindsey, but he refused to cooperate any further.

On October 3, 2017, the investigators had completed their investigation and turned over the audio of their interviews and case report to the Wood County Sheriff's Office for forwarding to the Wood County District Attorney's office, who would decide if criminal charges were appropriate.

### B.  Wood County Obstruction Charges

Ultimately, Wood County Deputy Ryan Bannerman, also a named defendant, was assigned to review the DCI report and determine whether there was probable cause to believe that either Lindsey or Zabawa had committed a crime. Bannerman had no prior contacts with Lindsey, and after reviewing the documents and listening to the interview recordings, he concluded that Lindsey's and Zabawa's statements to DCI about Reblin were false. In October 2017, Bannerman then requested that the district attorney's office charge them both with obstructing in violation of state law. Accordingly, in February 2018,

the Wood County District Attorney's office filed a criminal complaint against Lindsey and Zabawa for obstructing police based on the filing of false police reports.

Further, in April 2018, the state court found probable cause to believe that Lindsey had engaged in obstruction. Zabawa later pleaded guilty to that charge and was sentenced to nine months in prison. In a February 2021 interview with government investigators, including Detective Richter, now a defendant in this case as well, Zabawa also confirmed that all the pieces of her story about Reblin were lies concocted by Lindsey, who had asked her to be his so-called "safety net." In particular, Zabawa told investigators that Lindsey was convinced that with Reblin under investigation, no one from the Wisconsin Rapids Police department would bother Zabawa, and she could keep distributing drugs for Lindsey.

In June 2021, however, the assistant district attorney decided to drop any obstruction charges against Lindsey, in part due to the state court's pretrial ruling precluding discussion of Lindsey's drug activities and permitting discovery into Zabawa's own drug history.

### C. Federal Drug Charges against Lindsey

In September 2019, Lindsey was also federally charged with drug trafficking based on two incidents: (1) an August 6, 2019 stop by the Utah Highway State Aptrol in which 6.5 pounds of methamphetamine was seized; and (2) a May 2019 controlled purchase of methamphetamine that occurred after the subject of a traffic stop was found in possession of methamphetamine and identified Lindsey as his source.

5

Lindsey filed 30 pretrial motions in his criminal case, including a motion to dismiss due to violations of the First, Fourth, Fifth, Eighth and Fourteenth Amendments, again making several of the same allegations against Detective Reblin that Lindsey raised in this civil action.  As already mentioned, a central theme of many of Lindsey's pretrial motions was that the state, county and local investigators involved in his federal prosecution were biased against him because of his race *and* because of his 2017 complaint against Reblin -- allegations that Lindsey continued to insist were true.  More specifically, Lindsey claimed that the investigators and prosecutors involved in the federal criminal case brought against him were not only "covering up" for Reblin by failing to produce any of the text messages that Zabawa and he claimed were sent by Reblin, but indeed, the federal case itself was brought in retaliation for his complaining about Reblin.  Finally, Lindsey accused the federal investigators of fabricating evidence, coercing Zabawa to change her story, and withholding exculpatory evidence.

For all of this claimed misconduct, Lindsey sought various remedies, ranging from dismissal of the indictment, to suppression of evidence, to orders directing the government to produce certain information in discovery.  However, after review, this court denied all of Lindsey's pretrial motions, finding no evidentiary support for any of his accusations of retaliation or race discrimination.

Ultimately, Lindsey entered into a plea agreement, was found guilty and sentenced to 12 years in prison on the federal drug trafficking charges.  At the sentencing hearing, this court found that Lindsey "had filed numerous frivolous motions and several sworn affidavits that contain materially false information and representations of fact."  (Sent. Hear. (dkt. #205) 3–4, in 19-cr-125.)  The court also found, "The many fantastical stories

6

[Lindsey] plainly spun to avoid responsibility for his many crimes are not just more likely false than true, but beg credulity." (*Id.* at 4.)  Accordingly, the court found by a preponderance of the evidence that "the defendant committed perjury in false, sworn statements and repeatedly provided materially false information to the Court in an attempt to impact his charges, evidence, the course of trial, and now sentencing." (*Id.*)

OPINION

In this follow-on civil matter, plaintiff contends that defendants violated his constitutional rights by using their law enforcement authority to investigate and bring criminal charges against him, both allegedly because of his race and in retaliation for his accusations against defendant Reblin.  Specifically, Lindsey lists the following actions taken again him that were motivated by race discrimination and retaliation: (1) the failure to adequately investigate his accusations against Reblin; (2) his arrest and prosecution for state obstruction charges; and (3) his being stopped and fined for operating a motor vehicle after revocation in July 2017.[1]

Defendants contend that plaintiff's claims fail for numerous reasons, including that: his fabrications are not protected speech; this court already rejected his claims in his criminal case; and he lacks evidence to support any of his claims.  As to the latter reason, the court agrees, although based on a lack of evidence specific to each claim.  To prevail

---

[1] Plaintiff would also claim that defendants' investigation into his drug activities were motivated by racial discrimination and retaliation, but as this court explained in previous orders, plaintiff cannot challenge the federal drug investigation or charges unless and until his federal conviction has been successfully overturned. (Dkt. #17 (citing *Heck v. Humphrey*, 512 U.S. 477 (1994))).  Nor has plaintiff submitted specific evidence regarding any drug investigation by state or local authorities.

on a First Amendment retaliation claim, plaintiff would have to prove that the government took an adverse action against him because he engaged in constitutionally protected speech. *Adams v. Reagle*, 91 F.4th 880, 887 (7th Cir. 2024); *Roake v. Forest Pres. Dist. of Cook Cnty.*, 849 F.3d 342, 346 (7th Cir. 2017). To prevail on an equal protection claim, plaintiff would have to prove that defendants treated him differently from a similarly situated individual because of his race. *Adams*, 91 F.4th at 892 (citing *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977); *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005)). However, plaintiff has submitted no evidence to satisfy either of these standards.

With respect to the investigation into plaintiff's accusations against Detective Reblin, the evidence shows that after plaintiff complained to DCI, the agency conducted a thorough and independent investigation of the allegations. Specifically, DCI agents unaffiliated with Reblin interviewed numerous people regarding Lindsey's claims, as well as investigated Zabawa's rape claim against Reblin, and turned over the results of that investigation to the Wood County District Attorney's office for review. Nothing about the investigation or evidence in this record supports plaintiff's accusations of retaliation or race discrimination.

As for plaintiff's claim that the state obstruction charge was retaliatory, that claim fails so long as the arrest and prosecution was supported by probable cause. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); *see also Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004) (an officer's state of mind is "irrelevant" to a determination of the objective evidence of probably cause, and therefore, provides "no

basis for invalidating an arrest"). As the Wood County circuit court found, plaintiff's arrest was supported by probable cause evidence uncovered during DCI's investigation of plaintiff's accusations, Zabawa's recantation and confession, *and* plaintiff's failure to provide *any* evidence to support his accusations against Reblin.

Similarly, plaintiff's claim that a traffic stop and fine in July 2017 was retaliatory fails for much the same reason: plaintiff has failed to show that the officers who stopped and fined him for operating after revocation lacked probable cause to do so. Indeed, none of those officers are even defendants in this case.

Finally, plaintiff has offered no evidence to support his contention that all defendants discriminated against him because of his race. To begin, he offers no evidence of racial animus on the part of any defendant. Nor does he have evidence showing that defendants treated him differently from a similarly situated individual who was white. If anything, the evidence shows the opposite since his accomplice in fabricating allegations against Reblin, Amanda Zabawa, was also charged and convicted in state court, and she is white. In contrast, the obstruction charges against plaintiff were ultimately dismissed on the prosecutor's motion.

Accordingly, due to plaintiff's complete failure to put up admissible evidence to sustain his claims, defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Defendants' motions for summary judgment (dkt. ##79, 85, 92) are GRANTED.

9

2. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 22nd day of April, 2024.

           BY THE COURT:

           /s/

           _____
           WILLIAM M. CONLEY
           District Judge